UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE MAE RUFFIN,

      Plaintiff,

v.

WAYNE COUNTY TREASURER,

      Defendant.

Case No. 24-12266
Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [14] AND DENYING AS MOOT PLAINTIFF'S MOTION TO ADJOURN PROCEEDINGS [12]

---

Willie Mae Ruffin asserts that the Wayne County Treasurer unlawfully foreclosed upon her commercial property. She filed this *pro se* lawsuit on August 28, 2024, alleging violations of the Fourteenth Amendment due process clause (count 1), fraud and misrepresentation (count 2), and "violation of Michigan state law, including fraud, misrepresentation, and violations of the statutory procedures governing property tax foreclosures" (count 3). (ECF No. 1, PageID.4.) She also filed a motion to "adjourn proceedings for 90 days to allow [her] sufficient time to exhaust all available administrative remedies." (ECF No. 12, PageID.34.) The Treasurer opposes the motion to adjourn (ECF No. 17) and moves to dismiss Ruffin's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 14).

For the reasons below, the Court grants the Treasurer's motion to dismiss and denies as moot Ruffin's motion to adjourn.

## I.

On March 31, 2024, Willie Mae Ruffin's commercial property was foreclosed upon due to unpaid 2021 property taxes. *See In re 15715 Schaefer*, No. 23-007684-CH (Wayne Cnty. Cir. Ct. filed June 14, 2023), *available at* (ECF No. 14-1). According to the judgment of foreclosure (ECF No. 14-1), a petition for foreclosure was filed by the Wayne County Treasurer on June 14, 2023, supplemented in September 2023 and amended in February 2024, and ultimately granted by the Wayne County Circuit Court after Ruffin was given all statutorily required notices and opportunities to be heard (*see id.* at PageID.57 ("The Court finds that all those entitled to notice and an opportunity to be heard have been provided that notice and opportunity." (citing Mich. Comp. Laws §§ 211.78–211.79a)); *see also* ECF No. 14-2 ("Foreclosure packet, Notices, and Affidavits," including proof of service of notice of pending foreclosure and judicial hearing and proof of publication in Detroit Legal News of notice of forfeited property subject to foreclosure).)

Prior to the foreclosure, Ruffin had entered a payment plan, under which she could have satisfied her 2021 unpaid taxes and prevented foreclosure on the property by timely making ten payments of $263 each between October 2023 and August 2024.[1] (ECF No. 14-3.) She agreed that if she failed to make timely payments under

---

[1] It is unclear whether the payment plan required Ruffin to satisfy her unpaid property taxes by March 2024 or by August 2024. The payment plan lists 10 monthly payment deadlines, ending with a payment due on August 8, 2024, and states that Ruffin "stipulate[d] and agree[d] to redeem the property" by making the payments outlined in that payment schedule. (ECF No. 14-3.) But the payment plan also states that Ruffin agreed "to pay all installment payments due by March payment date" to

the payment plan, she would "be in default of th[e] Stipulated Agreement and cause the property to be included in the contested Judgment of Foreclosure to be entered"— i.e., if she missed any payments, her commercial property would be foreclosed upon. (*Id.*) Ruffin made the first few payments under the agreement, but eventually stopped, thus defaulting on the plan. More specifically, Ruffin's payment history shows she made the first three payments: the first payment that was due when she entered the agreement in October 2023, followed by payments in December 2023 and January 2024. (ECF No. 14-4, PageID.88.) Ruffin concedes that she missed certain payments and defaulted on the agreement, though she says she also made payments in February and March 2024. (ECF No. 19, PageID.111–112, 118–119.) But her other allegations, *see, e.g.*, *infra* note 2, plus the March foreclosure and the payment history ledger, all suggest otherwise (*see also* ECF No. 14, PageID.43 n.1). The Treasurer proceeded to foreclose upon Ruffin's property.

Five months later, on August 28, 2024, Ruffin filed this *pro se* complaint against the Wayne County Treasurer alleging (1) deprivation of property without due process of law in violation of the Fourteenth Amendment, (2) fraud and misrepresentation, and (3) "violation of Michigan state law, including fraud, misrepresentation, and violations of the statutory procedures governing property tax foreclosures." (ECF No. 1, PageID.3–4.) Ruffin asserts that the Treasurer "fail[ed] to provide proper notice of any defaults," "us[ed] fraudulent and deceptive practices [to]

_____

avoid foreclosure. (*Id.*) Either way, the outcome is the same here. It is undisputed that Ruffin defaulted on the payment plan.

deprive[] [her] of the opportunity to challenge the foreclosure or redeem the Property," and "knowingly and intentionally made false representations and engaged in deceptive practices regarding the amount of taxes owed, the status of foreclosure proceedings, and the terms for redeeming the Property." (*Id.* at PageID.3.) She seeks monetary, declaratory, and injunctive relief, including "an order dismissing and stopping the foreclosure sale." (*Id.* at PageID.5.) The Treasurer moves to dismiss Ruffin's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 14.) The motions (including Ruffin's request for an adjournment to exhaust administrative remedies) are fully briefed and do not require further argument. *See* E.D. Mich. LR 7.1(f).

## II.

The Court begins and ends its analysis with Ruffin's Fourteenth Amendment due process claim. According to Ruffin, the Treasurer deprived her of due process because he "fail[ed] to provide proper notice of any defaults" and "us[ed] fraudulent and deceptive practices [to] deprive[] [her] of the opportunity to challenge the foreclosure or redeem the Property." (ECF No. 1, PageID.3.) She acknowledges that she had actual notice of the foreclosure and indeed entered a payment plan that would have allowed her to prevent the foreclosure, and she concedes that the plan had "a strict clause stating that any missed payment would result in immediate foreclosure." (ECF No. 19, PageID.118.) But she contends in her response to the motion to dismiss that the Treasurer's "strict enforcement" of the payment agreement "violates basic principles of fairness and due process" (*id.* at PageID.120)—that she only

4

"temporarily defaulted due to unforeseen personal circumstances," reasonably expected "the opportunity to cure the default upon her return to Michigan," and "did not receive any reminders or notices about missed payments while she was out of state" (*id.* at PageID.111–112).[2]

Ruffin's constitutional claim must be dismissed for several reasons. The Court starts, as it must, with the *Rooker-Feldman* doctrine and Tax Injunction Act, which are jurisdictional. *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.").

Under the *Rooker-Feldman* doctrine, "federal courts lack subject matter jurisdiction to review the decisions of state courts." *Givens v. Homecomings Fin.*, 278 F. App'x 607, 608–09 (6th Cir. 2008) (citing *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923)). "Honoring principles of state/federal comity, the [*Rooker-Feldman*] doctrine bars a state-court loser from circumventing 28 U.S.C. § 1257, which limits appeals of state court decisions to one venue—the United States Supreme Court." *Patterson v. United Healthcare Ins. Co.*, 76 F.4th 487, 494 (6th Cir. 2023); *see also Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 489 (6th Cir. 2005) ("The proper avenue to redress [an unfavorable state court judgment] is application to the United States Supreme Court

---

[2] Ruffin asserts that she missed payments because she had to leave Michigan from March 12 to June 14, 2024, to care for a sick family member. (ECF No. 19, PageID.118.) But the February 8 and March 7, 2024, missed payments were both due before her departure. (ECF No. 14-3, PageID.86.) As were two of the four hearings on the foreclosure petition. (ECF No. 14-1, PageID.57 (judgment of foreclosure stating that "[a] hearing on the Petition and objections thereto was held on February 21, 2024, February 22, 2024 and March 20, 2024 and March 21, 2024").)

for a writ of certiorari to review a final decision of a state's highest court, pursuant to 28 U.S.C. § 1257.").

Put simply, *Rooker-Feldman* applies when a party who "lost" in state court "seek[s] reversal of a *state* court judgment in a lower *federal* court." *Patterson*, 76 F.4th at 495 (emphasis added). Ruffin "lost" when the state court entered the judgment of foreclosure against her. Now, in asking for an order "dismissing and stopping the foreclosure sale" and a declaration "that the [Treasurer's] actions violated [her] constitutional rights and applicable state laws" (ECF No. 1, PageID.5), Ruffin asks this Court to review and reverse that state court judgment. That is precisely the relief that *Rooker-Feldman* prohibits. *See Kafele*, 161 F. App'x at 490 ("[T]he plaintiffs' claims [that the state court foreclosure action resulted in procedural due process violations] are 'predicated on their conviction that the state courts were wrong' and, therefore, satisfy 'the very definition' of a case requiring *Rooker-Feldman* abstention."); *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869, 873 (E.D. Mich. Oct. 28, 2010) ("Plaintiff lost a state court foreclosure and possession action, and the state court entered an order of eviction against him. Any of Plaintiff's current claims which seek to disturb the state court judgments of foreclosure, possession, or eviction, are subject to the *Rooker–Feldman* doctrine."); *Kuerbitz v. Meisner* ("*Kuerbitz II*"), No. 17-2284, 2018 WL 5310762, at *2 (6th Cir. July 11, 2018) ("[T]o the extent that . . . [the plaintiff] seeks to challenge the state-court judgment of foreclosure against [him], the *Rooker-Feldman* doctrine applies and prevents this court from

reviewing the claims."). So, pursuant to the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over Ruffin's claims.

The same can be said of the Tax Injunction Act. This Act likewise deprives the Court of subject matter jurisdiction over Ruffin's claims. *See California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (explaining that the Tax Injunction Act is a limitation on the subject matter jurisdiction of the federal courts). Under the TIA, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341; *see also Grace Brethren Church*, 457 U.S. at 411 ("[B]ecause Congress' intent in enacting the Tax Injunction Act was to prevent federal-court interference with the assessment and collection of state taxes, we hold that the Act prohibits declaratory as well as injunctive relief."). "[T]he TIA and its policy of comity bar actions for injunctions, declaratory judgments or damages under Section 1983, and this jurisdictional bar applies equally to constitutional claims." *Kuerbitz v. Meisner* (*"Kuerbitz I"*), No. 16-12736, 2017 WL 780697, at *3 (E.D. Mich. Feb. 1, 2017), *report and recommendation adopted*, No. 16-12736, 2017 WL 769828 (E.D. Mich. Feb. 28, 2017), *aff'd*, *Kuerbitz II*, *supra*; *see Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 378 (6th Cir. 1993) ("Although the TIA mentions only injunctions, its policy of comity bars declaratory judgment and 42 U.S.C. § 1983 damage actions as well."). The Sixth Circuit has also held that "the TIA bars claims challenging the manner in which tax foreclosures are carried out." *Anderson v. County of Wayne*, No. 10-13708, 2011 WL 2470467, at *7 (E.D. Mich. June 20, 2011)

(citing *Dixon v. Oisten*, 62 F. App'x 105, 105 (6th Cir. 2003); *Johnson v. Mich. Dep't of Treasury*, 211 F.3d 1269, 2000 WL 571916, at *2 (6th Cir. May 4, 2000) (unpublished table decision)).

Because Ruffin challenges the Wayne County Treasurer's assessment and collection of her unpaid property taxes, including his resulting foreclosure upon her property, and seeks injunctive and declaratory relief as well as damages under 42 U.S.C. § 1983, the TIA is plainly implicated. So the TIA divests the Court of subject matter jurisdiction unless Ruffin had no "plain, speedy and efficient remedy" in Michigan state courts. 28 U.S.C. § 1341. She fails to make that showing.

The state court remedy contemplated by the TIA "merely requires that the state provide certain minimal procedural protections against illegal tax collection." *Hedgepeth v. Tennessee*, 215 F.3d 608, 615 (6th Cir. 2000); *see Anderson*, 2011 WL 2470467, at *7 ("[T]he TIA prohibits this Court from interfering with Michigan state tax disputes unless there is no remedy available under state law."); *see also Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 218 (6th Cir. 2007) ("The state remedy need not be the best of all possible remedies. [T]he likelihood of plaintiff's success in the state court is not a factor to be considered when determining whether the jurisdictional prohibition of § 1341 applies." (alteration in original) (citation omitted)). That is, state courts "need only provide the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Pegross v. Oakland Cnty. Treasurer*, 592 F. App'x 380, 385 (6th Cir. 2014) (citation modified).

8

Here, as explained, Ruffin had a "full hearing" and opportunity to be heard. (*See* ECF No. 14-1.) And "numerous courts have examined the remedies available to a taxpayer under the laws of the State of Michigan and have . . . upheld their adequacy" under the TIA. *Indigenous Am. People Inhabiting Cnty. of Wayne v. Wayne Cnty. Mun. Corp.*, No. 19-12579, 2020 WL 4006761, at *7 (E.D. Mich. Feb. 25, 2020), *report and recommendation adopted*, No. 19-12579, 2020 WL 1910150 (E.D. Mich. Apr. 20, 2020); *see Pegross*, 592 F. App'x at 385–86; *Key v. City of Detroit*, No. 24-10458, 2025 U.S. Dist. LEXIS 49683, at *9 (E.D. Mich. Feb. 24, 2025) ("The relevant portions of Michigan's General Property Tax Act make clear that [a 'plain, speedy, and efficient' remedy] was available to [plaintiff] in the Michigan state courts."); *Miles v. Wayne Cnty. Treasurer*, No. 24-11125, 2025 WL 359322, at *5 (E.D. Mich. Jan. 31, 2025) (same); *see also Anderson*, 2011 WL 2470467, at *7 (explaining that the TIA barred plaintiffs' claims where they "had several options" under Michigan state law: "[t]hey could have (1) paid their delinquent taxes; (2) participated in the public auctions; or (3) challenged the foreclosure ruling in state court").

Ruffin's allegations that the Treasurer violated her due process rights and committed fraud in connection with the foreclosure does not affect the adequacy of these state court remedies under the TIA. *See Indigenous Am. People*, 2020 WL 4006761, at *7 (explaining that courts have found state court remedies sufficient under the TIA "even where a plaintiff seeks vindication of his constitutional rights in the state courts, including by pleading due process, takings, and/or other constitutional claims"); *Key*, 2025 U.S. Dist. LEXIS 49683, at *7 ("A plaintiff may not

avoid the jurisdictional limitations of the TIA by simply characterizing a state or local tax collection dispute as a Section 1983 claim or a violation of due process."); *Edwards v. Meisner*, No. 18-13488, 2019 U.S. Dist. LEXIS 465, at \*23 (E.D. Mich. Jan. 2, 2019) ("It is well settled that allegations of deprivations of constitutional rights do not render the TIA inapplicable. Thus mere citations to 42 U.S.C. § 1983 or the Fourteenth Amendment cannot create federal court jurisdiction, if the claims as alleged are barred by principles of comity and the TIA." (citation modified) (quoting *Pegross*, 592 F. App'x at 381)). It is similarly "irrelevant" that Ruffin did not avail herself of those remedies or that they may now be unavailable. *Miles*, 2025 WL 359322, at \*5 ("Whether Miles failed to pursue the claims and remedies available to him in the state courts, or whether he did so but was unsuccessful, this does not render his state remedies inadequate for purposes of overcoming the jurisdictional bar of the TIA."); *see Hammoud v. County of Wayne*, No. 15-14461, 2016 WL 4560635, at \*5 (E.D. Mich. Sept. 1, 2016) (rejecting plaintiffs' argument that "the time to appeal the judgments of foreclosure and bring these claims in state court has lapsed" and explaining that plaintiffs had adequate remedies under the TIA "because they *could* have pursued those claims in state court"), *aff'd*, 697 F. App'x 445 (6th Cir. 2017).

Finally, for similar reasons, the doctrine of res judicata, i.e., claim preclusion, bars Ruffin's claims. Indeed, Ruffin's challenges to the validity of the foreclosure judgment could have been raised in the state court proceedings. And Michigan law instructs that res judicata "bars not only claims actually litigated in the prior action, but all claims arising out of the same transaction that the parties, exercising

reasonable diligence, *could have raised* in the prior action but did not." *Rahaman v. Am. Connect Fam. Prop. & Cas. Ins.*, 563 F. Supp. 3d 700, 702 (E.D. Mich. 2021) (emphasis added). Res judicata therefore bars Ruffin from bringing these claims in this Court. *See Anderson*, 2011 WL 2470467, at *6 ("Even assuming that Plaintiffs' claims were not barred by *Rooker-Feldman*, they would be barred by principles of res judicata. Any claims that Plaintiffs seek to make in this Court could have been brought in the Michigan state court proceedings."); *Kuerbitz II*, 2018 WL 5310762, at *2 (affirming district court's dismissal of plaintiff's constitutional claims "on the ground that they are barred by the *Rooker-Feldman* doctrine, the Tax Injunction Act, and res judicata" and explaining that the court is "barred from reviewing any claims related to the tax-foreclosure proceedings that were or could have been raised in the state courts").

Lastly, to the extent Ruffin's state law claims are not barred for the same reasons,[3] the Court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

---

[3] *See, e.g.*, *Kuerbitz II*, 2018 WL 5310762, at *3 ("[T]o the extent that [plaintiff] seeks to challenge the judgment in his state-court foreclosure proceedings on the ground that they were tainted by the 'fraudulently altered' tax agreement, res judicata bars this court from reviewing the claim."); *Indigenous Am. People*, 2020 WL 4006761, at *4–7; *Heinz v. HSBC Mortg. Servs., Inc.*, No. 21-542, 2021 U.S. Dist. LEXIS 203680, at *12–15 (N.D. Ohio Oct. 22, 2021).

## III.

Accordingly, the Court GRANTS the Wayne County Treasurer's motion to dismiss (ECF No. 14) and DENIES AS MOOT Ruffin's motion to adjourn (ECF No. 12). A separate judgment will follow.

SO ORDERED.

Dated: August 18, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE